JOSIAH R. DORR, WILLIAM B. ALVORD, and JAMES STETSON *versus* CHRISTIAN W. DREYER
August 30, 1839

G. E. Hand, attorney for plaintiffs in certiorari.

B. F. H. Witherell & Buel, attornies for defendant in certiorari.

[INDORSEMENT]

Dorr, Alvord &
Stetson
vs.
Dreyer.

[OPINION]

| Josiah R Dorr William B Alvord & James Stetson vs Christian W Dreyer | Sup Court: 1st Circuit July term 1839— |
|---|---|

Certiorari:

The plaintiff below sued out process against the defendants as "traders under the style of the Detroit Iron C°" in a plea of Trespass on the case, and declared generally for "work, labor, damages &c" & at the same time filed a bill of particulars: the defendants, as appears by the return of the Justice appeared by Hand their Attorney" and plead "nonassumpsit." The Justice after hearing and considering the cause rendered judgment in favor of the plff for $52.25 damages & $2.56 costs of suit; to reverse which judgment a certiorari was sued out by the plffs' in Error:

The following are the principal points relied upon by the plffs to reverse the judgment. (here insert brief) Nos

1: It is a well settled rule that objections of the nature suggested in the first point must be taken advantage of on the return of the process by a motion to quash or by plea in abatement: the defendants below having appeared by an agent and pleaded generally to the declaration waived all objections to the process.

2: Upon an examination of the return of the Justice, it appears, that the Detroit Iron C° pr F A Willis by a written authority authorized one A. W Wood "to engage two or three good, steady, faithful & temperate men, to work at finishing in their establishment, and that to such men constant employment and good wages payable every Saturday night would be given." Wood produced & proved the execution of the authority, which he states was given to him by Willis by the direction of Alvord, one of the plffs in error, who remarked that it (the authority) was correct: Wood further testified that by virtue of this authority he engaged the plff below, Dreyer, at Rochester, N Y; that he was such a man as he was authorized to employ, having been recommended to him as a temperate man and a good workman: that Dreyer came to Detroit with his wife & two children, the latter part of August 1837, pursuant to the engagement: and further that he had seen Dreyer at work, and that $2 per day were the wages paid for finishers:—The witness also testified that the charges for travelling expenses were reasonable, altho' there was no understanding that such expenses would be paid: Another witness Gorman, testifies that Dreyer was a good workman, that he was discharged sometime in the beginning of Oct 1837—and that he knew no reason for his discharge: Upon being recalled Wood further stated that Dreyer's work was trimming & filing: that he saw him at brass work, & that it was well done: The plff below having rested his case, the defendants below introduced one George Brundit, who testified that Dreyer worked at the foundry

at finishing; that he was no chipper & ignorant of the use of the lathe: did not know why he was discharged—that he was good enough at filing and further, that workmen are paid $2 per day: Ge° A Fletcher another witness testified, that he worked at the foundry & in the same room with Dreyer; "that his filing was done very well," but that it might have been done sooner:—thinks his services worth 12 or 13s per day; and that he did not seem to understand the use of the lathe."

Upon a review of the above, which seems to have been all the testimony introduced on the trial below, it is difficult to perceive how this court can sustain the objection taken by the plff in error that the evidence does not shew any undertaking or assumpsit on their part: The testimony of Wood is conclusive on this point: he exhibited the authority by virtue of which he had hired Dreyer which authority was subsequently recognized by permitting Dreyer to enter & work in the foundry: he further states that he commenced work the latter part of August and it is in proof that he continued until some [time] in the beginning of Oct. when he was discharged, but for what cause, none of the witnesses were enabled to state: There is an apparent discrepancy in the testimony of the witness with respect to the skill of Dreyer as a finisher, but all concur that his work was well done: But it is objected, thirdly, that there was no evidence to establish the fact that the defendants below constituted the Detroit Iron C°. The return of the Justice by which we are bound, does not support this allegation, for it is expressly stated by Wood, that he was "authorized by the *defendants* to go to New York and employ workmen for them:" from this testimony the Justice had a right to infer that the C° was constituted of the plff's in Error. Besides it does not appear from the return that the objections stated in the brief of the plff's were made at the trial of the cause below: it has

been repeatedly decided by this Court, that in order to avail himself of irregularities or errors in the court below, objection must be made at the proper time during the progress of the trial, otherwise this Court will not give a party the benefit of such irregularities or error.

Upon the whole, it appears that there was, to say the least, some evidence to support the judgment, & this Court will not stop to enquire whether it was so full or ample as to render the case entirely free from doubt.

Judgment affirmed—

Hand for plff in Error.
Buel for deft in Error.